IN THE DISTRICT COURT OF THE UNITED STATES OF AMERICA
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| ALIVIA L. GREENFIELD and JOSHUA GREENFIELD<br><br>   Plaintiffs,<br><br> vs.<br><br>THE MONROE CLINIC, INC., a corporation, and JOSEPH EHLE, M.D.<br><br>   Defendant. | No. Civil Case No: 17-cv 50206 |

## COMPLAINT

### COUNT I—MEDICAL NEGLIGENCE

NOW COMES the Plaintiff, ALIVIA L. GREENFIELD, by and through her attorneys, BARRETT LAW FIRM, P.C., complaining against the Defendants, THE MONROE CLINIC, INC., a corporation, and JOSEPH EHLE, M.D., and states as follows:

1. The Plaintiff is a citizen of the state of Illinois.

2. The Defendant, THE MONROE CLINIC, INC., is a Wisconsin corporation which has its principal place of business in the State of Wisconsin.

3. The Defendant, JOSEPH EHLE, M.D., is a citizen of the State of Wisconsin.

4. THE MONROE CLINIC, INC., is doing business as a foreign corporation in Freeport, Stephenson County, Illinois, as a medical clinic under the name "Highland Women's Care" (hereinafter "The Clinic").

5. The amount in controversy, exclusive of interest and costs, exceeds the amount or value specified by 28 U.S.C. § 1332(a) and jurisdiction in this proceeding exists by virtue of 28 U.S.C. 1332(a)(1).

6. The Defendant, JOSEPH EHLE, M.D., (hereinafter "Dr. Ehle") is a physician licensed to practice medicine in the State of Illinois and who holds himself out as a board certified specialist in Obstetrics and Gynecology.

7. At all times herein pertinent, Dr. Ehle was an employee and agent of the defendant, THE MONROE CLINIC, INC., practicing in Freeport, Stephenson County, Illinois, at The Clinic and was acting within the scope and course of such employment and agency.

8. On or about January 16, 2015, the Plaintiff, ALIVIA L. GREENFIELD (hereinafter "Alivia"), presented to The Clinic for having irregular menstruations.

9. After visits with Dr. Ehle on June 18, 2015 and July 2, 2015, Dr. Ehle recommended that Alivia undergo an LSCH (a Laparoscopic Supracervical Hysterectomy) on July 22, 2015, to which Alivia consented.

10. On July 22, 2015, Alivia underwent a Laparoscopic Supracervical Hysterectomy performed by Dr. Ehle.

11. During the performance of the procedure, Dr. Ehle sent certain tissue suspicious for tumor to the pathology laboratory and spoke with the pathologist who informed him that examination of the tissue showed spindle cell neoplasm with further

diagnosis pending additional studies. Essentially, this diagnosis was inconclusive for the presence or absence of a malignancy.

12. Despite this information from the pathologist, Dr. Ehle continued with the procedure and removed the uterus by means of morsellation of the uterine tissue into tiny fragments and removing as much of the fragmentation of the tissue as possible through the laparoscopic instrumentation.

13. Because the uterine tissue sent to pathology following the conclusion of this procedure was minutely fragmented due to the morsellation of the uterus, the findings on pathology at that time was Endometrial Stromal Tumor but further stating: "[h]owever, as the tumor is fragmented, the margin cannot be determined and distinction of endometrial stromal nodule and low-grade sarcoma cannot be performed." Subsequent testing could not determine whether the specimens were low-grade sarcoma or benign.

14. Alivia required referral to a gynecological oncologist who scheduled her for a C.T. scan and an exploratory laparoscopy on September 21, 2015. This procedure had to be converted to an open laparotomy and approximately 30 small sarcomatous tumors were found throughout Alivia's abdominal cavity and requiring that a full surgical procedure described as "an exploratory laparotomy, right salpingo-oophorectomy, trachelectomy, total omentectomy, and removal of sarcomatous implants" be performed.

15. The act of morsellating the uterus with the potentially malignant cells therein while within Alivia's body was the cause of the metastasis of the malignant tumor throughout her abdomen.

16. It was the duty of Dr. Ehle to possess and apply the knowledge and to use the skill and care ordinarily used by gynecologists under the same or similar circumstances as present in this case.

17. Notwithstanding his duty as aforesaid, Dr. Ehle was negligent in his care and treatment of Alivia in one or more of the following respects:

   a. Morsellated Alivia's uterus into tiny fragments within her body when he knew, or should have known, that there were potentially malignant tumor cells present.

   b. Morsellated Alivia's uterus into tiny fragments within her body and thereby caused the metastasis of the tumor from a stage I to a stage III.

   c. Failed to convert his procedure to an open laparotomy so that he could remove the uterus intact and not cause the metastasis of a potentially malignant tumor by cutting it up into tiny fragments inside of Alivia.

   d. Failed to use a sack to contain the uterus fragments without exposing them to Alivia's open and unprotected abdominal cavity if he chose to morsellate or cut up the uterus while within Alivia's body.

18. The negligence of Dr. Ehle caused Alivia to sustain damages in one or more of the following respects:

   a. She lost the opportunity for a cure of her malignancy by removal of it at stage I.

  b. He caused her malignant sarcoma to metastasize to a stage III disease, which is not curable and has a 90 to 100% chance of returning.

  c. He has caused her life expectancy to be significantly shortened.

  d. She has had to undergo significant surgical procedures in an effort to treat her advanced malignancy.

  e. She will require life-long medical care, monitoring and medication to treat her disease in the future, including the possibility of future surgical procedures.

  f. She has experienced great pain and suffering and in the future will continue so to suffer.

  g. She has suffered a loss of her normal life.

  h. She has suffered disfigurement and scarring.

  i. She has expended great sums of money for medical, surgical and hospital care and will in the future continue to be required to expend such sums.

19. The Defendant, THE MONROE CLINIC, INC., is liable for the negligent acts of its employee, Dr. Ehle, by virtue of *respondeat superior.*

WHEREFORE, the Plaintiff, ALVIA L. GREENFIELD, prays judgment against the Defendant, THE MONROE CLINIC, INC., a corporation, and JOSEPH EHLE, M.D., in the sum of $10,000,000.00 for her compensatory damages, plus her costs of suit.

## **COUNT II – MEDICAL NEGLIGENCE – LOSS OF CONSORTIUM**

NOW COMES the Plaintiff, JOSHUA GREENFIELD, by and through his attorneys, BARRETT LAW FIRM, P.C., complaining against the Defendants, THE MONROE CLINIC, INC., a corporation, and JOSEPH EHLE, M.D., and states as

follows:

1. The Plaintiff is a citizen of the state of Illinois.

2. The Defendant, THE MONROE CLINIC, INC., is a Wisconsin corporation which has its principal place of business in the State of Wisconsin.

3. The Defendant, JOSEPH EHLE, M.D., is a citizen of the State of Wisconsin.

4. THE MONROE CLINIC, INC., is doing business as a foreign corporation in Freeport, Stephenson County, Illinois, as a medical clinic under the name "Highland Women's Care" (hereinafter "The Clinic").

5. The amount in controversy, exclusive of interest and costs, exceeds the amount or value specified by 28 U.S.C. § 1332(a) and jurisdiction in this proceeding exists by virtue of 28 U.S.C. 1332(a)(1).

6. The Defendant, JOSEPH EHLE, M.D., (hereinafter "Dr. Ehle") is a physician licensed to practice medicine in the State of Illinois and who holds himself out as a board certified specialist in Obstetrics and Gynecology.

7. At all times herein pertinent, Dr. Ehle was an employee and agent of the defendant, THE MONROE CLINIC, INC., practicing in Freeport, Stephenson County, Illinois, at The Clinic and was acting within the scope and course of such employment and agency.

8. On or about January 16, 2015, the Plaintiff, ALIVIA L. GREENFIELD (hereinafter "Alivia"), presented to The Clinic for having irregular menstruations.

9. After visits with Dr. Ehle on June 18, 2015 and July 2, 2015, Dr. Ehle recommended that Alivia undergo an LSCH (a Laparoscopic Supracervical Hysterectomy) on July 22, 2015, to which Alivia consented.

10. On July 22, 2015, Alivia underwent a Laparoscopic Supracervical Hysterectomy performed by Dr. Ehle.

11. During the performance of the procedure, Dr. Ehle sent certain tissue suspicious for tumor to the pathology laboratory and spoke with the pathologist who informed him that examination of the tissue showed spindle cell neoplasm with further diagnosis pending additional studies. Essentially, this diagnosis was inconclusive for the presence or absence of a malignancy.

12. Despite this information from the pathologist, Dr. Ehle continued with the procedure and removed the uterus by means of morsellation of the uterine tissue into tiny fragments and removing as much of the fragmentation of the tissue as possible through the laparoscopic instrumentation.

13. Because the uterine tissue sent to pathology following the conclusion of this procedure was minutely fragmented due to the morsellation of the uterus, the findings on pathology at that time was Endometrial Stromal Tumor but further stating: "[h]owever, as the tumor is fragmented, the margin cannot be determined and distinction of endometrial stromal nodule and low-grade sarcoma cannot be performed." Subsequent testing could not determine whether the specimens were low-grade sarcoma or benign.

7

14. Alivia required referral to a gynecological oncologist who scheduled her for a C.T. scan and an exploratory laparoscopy on September 21, 2015. This procedure had to be converted to an open laparotomy and approximately 30 small sarcomatous tumors were found throughout Alivia's abdominal cavity and requiring that a full surgical procedure described as "an exploratory laparotomy, right salpingo-oophorectomy, trachelectomy, total omentectomy, and removal of sarcomatous implants" be performed.

15. The act of morsellating the uterus with the potentially malignant cells therein while within Alivia's body was the cause of the metastasis of the malignant tumor throughout her abdomen.

16. It was the duty of Dr. Ehle to possess and apply the knowledge and to use the skill and care ordinarily used by gynecologists under the same or similar circumstances as present in this case.

17. Notwithstanding his duty as aforesaid, Dr. Ehle was negligent in his care and treatment of Alivia in one or more of the following respects:

    a. Morsellated Alivia's uterus into tiny fragments within her body when he knew, or should have known, that there were potentially malignant tumor cells present.

    b. Morsellated Alivia's uterus into tiny fragments within her body and thereby caused the metastasis of the tumor from a stage I to a stage III.

    c. Failed to convert his procedure to an open laparotomy so that he could remove the uterus intact and not cause the metastasis

    of a potentially malignant tumor by cutting it up into little pieces inside of Alivia.

  d. Failed to use a sack to contain the uterus fragments without exposing them to Alivia's open and unprotected abdominal cavity if he chose to morsellate or cut up the uterus while within Alivia's body.

18. The negligence of Dr. Ehle caused Alivia to sustain damages in one or more of the following respects:

  a. She lost the opportunity for a cure of her malignancy by removal of it at stage I.

  b. He caused her malignant sarcoma to metastasize to a stage III disease, which is not curable and has a 90 to 100% chance of returning.

  c. He has caused her life expectancy to be significantly shortened.

  d. She has had to undergo significant surgical procedures in an effort to treat her advanced malignancy.

  e. She will require life-long medical care, monitoring and medication to treat her disease in the future, including the possibility of future surgical procedures.

  f. She has experienced great pain and suffering and in the future will continue so to suffer.

  g. She has suffered a loss of her normal life.

  h. She has suffered disfigurement and scarring.

  i. She has expended great sums of money for medical, surgical and hospital care and will in the future continue to be required to expend such sums.

19. The Defendant, THE MONROE CLINIC, INC., is liable for the negligent acts of its employee, Dr. Ehle, by virtue of *respondeat superior.*

20.     At all times herein pertinent Alivia was married to the Plaintiff, JOSHUA GREENFIELD, who has been deprived of her services, support, relationship and consortium.

WHEREFORE, the Plaintiff, JOSHUA GREENFIELD, prays judgment against the Defendant, THE MONROE CLINIC, INC., a corporation, and JOSEPH EHLE, M.D., in the sum exceeding $2,000,000.00 for his compensatory damages, plus his costs of suit.

### COUNT III — INFORMED CONSENT

NOW COMES the Plaintiff, ALIVIA L. GREENFIELD, by and through her attorneys, BARRETT LAW FIRM, P.C., complaining against the Defendants, THE MONROE CLINIC, INC., a corporation, and JOSEPH EHLE, M.D., and states as follows:

1.     The Plaintiff is a citizen of the state of Illinois.

2.     The Defendant, THE MONROE CLINIC, INC., is a Wisconsin corporation which has its principal place of business in the State of Wisconsin.

3.     The Defendant, JOSEPH EHLE, M.D., is a citizen of the State of Wisconsin.

4.     THE MONROE CLINIC, INC., is doing business as a foreign corporation in Freeport, Stephenson County, Illinois, as a medical clinic under the name "Highland Women's Care" (hereinafter "The Clinic").

5. The amount in controversy, exclusive of interest and costs, exceeds the amount or value specified by 28 U.S.C. § 1332(a) and jurisdiction in this proceeding exists by virtue of 28 U.S.C. 1332(a)(1).

6. The Defendant, JOSEPH EHLE, M.D., (hereinafter "Dr. Ehle") is a physician licensed to practice medicine in the State of Illinois and who holds himself out as a board certified specialist in Obstetrics and Gynecology.

7. At all times herein pertinent, Dr. Ehle was an employee and agent of the defendant, THE MONROE CLINIC, INC., practicing in Freeport, Stephenson County, Illinois, at The Clinic and was acting within the scope and course of such employment and agency.

8. On or about January 16, 2015, the Plaintiff, ALIVIA L. GREENFIELD (hereinafter "Alivia"), presented to The Clinic for having irregular menstruations.

9. After visits with Dr. Ehle on June 18, 2015 and July 2, 2015, Dr. Ehle recommended that Alivia undergo an LSCH (a Laparoscopic Supracervical Hysterectomy) on July 22, 2015.

10. It was the duty of Dr. Ehle to inform Alivia that there was a risk of spreading cancer to a more serious stage of the disease if he were to perform the LSCH in the manner he intended to perform it and there was cancer present in Alivia's uterine tissues. It was further his duty to inform Alivia of alternatives to the performance of the procedure in the manner he intended to perform it that would alleviate the risk of spreading any cancer present including use of a bag or a sack to contain the uterus

before morsellation or performance of a standard hysterectomy with removal of the uterus intact.

11. Dr. Ehle failed to inform Alivia of the risks and alternatives to the procedure as set forth in paragraph 10 above.

12. Had Dr. Ehle informed Alivia of the risks and alternatives to the procedure as set forth in paragraph 10 above, no reasonable person, including Alivia, would have consented to the performance of the surgical procedure by Dr. Ehle as he intended to perform it.

13. On July 22, 2015, Alivia underwent a Laparoscopic Supracervical Hysterectomy performed by Dr. Ehle.

14. During the performance of the procedure, Dr. Ehle sent certain tissue suspicious for tumor to the pathology laboratory and spoke with the pathologist who informed him that examination of the tissue showed spindle cell neoplasm with further diagnosis pending additional studies. Essentially, this diagnosis was inconclusive for the presence or absence of a malignancy.

15. Despite this information from the pathologist, Dr. Ehle continued with the procedure and removed the uterus by means of morsellation of the uterine tissue into tiny fragments and removing as much of the fragmentation of the tissue as possible through the laparoscopic instrumentation.

16. Because the uterine tissue sent to pathology following the conclusion of this procedure was minutely fragmented due to the morsellation of the uterus, the

findings on pathology at that time was Endometrial Stromal Tumor but further stating: "[h]owever, as the tumor is fragmented, the margin cannot be determined and distinction of endometrial stromal nodule and low-grade sarcoma cannot be performed." Subsequent testing could not determine whether the specimens were low-grade sarcoma or benign.

17. Alivia required referral to a gynecological oncologist who scheduled her for a C.T. scan and an exploratory laparoscopy on September 21, 2015. This procedure had to be converted to an open laparotomy and approximately 30 small sarcomatous tumors were found throughout Alivia's abdominal cavity and requiring that a full surgical procedure described as "an exploratory laparotomy, right salpingo-oophorectomy, trachelectomy, total omentectomy, and removal of sarcomatous implants" be performed.

18. The act of morsellating the uterus with the potentially malignant cells therein while within Alivia's body was the cause of the metastasis of the malignant tumor throughout her abdomen.

19. Performance of the procedure by Dr. Ehle without Alivia's informed consent as alleged herein caused Alivia to be injured as follows:

   a. She lost the opportunity for a cure of her malignancy by removal of it at stage I.

   b. He caused her malignant sarcoma to metastasize to a stage III disease, which is not curable and has a 90 to 100% chance of returning.

    c. He has caused her life expectancy to be significantly shortened.

    d. She has had to undergo significant surgical procedures in an effort to treat her advanced malignancy.

    e. She will require life-long medical care, monitoring and medication to treat her disease in the future, including the possibility of future surgical procedures.

    f. She has experienced great pain and suffering and in the future will continue so to suffer.

    g. She has suffered a loss of her normal life.

    h. She has suffered disfigurement and scarring.

    i. She has expended great sums of money for medical, surgical and hospital care and will in the future continue to be required to expend such sums.

20. The Defendant, THE MONROE CLINIC, INC., is liable for the negligent acts of its employee, Dr. Ehle, by virtue of *respondeat superior.*

WHEREFORE, the Plaintiff, ALVIA L. GREENFIELD, prays judgment against the Defendant, THE MONROE CLINIC, INC., a corporation, and JOSEPH EHLE, M.D., in the sum of $10,000,000.00 for her compensatory damages, plus her costs of suit.

## **COUNT IV — INFORMED CONSENT — LOSS OF CONSORTIUM**

NOW COMES the Plaintiff, JOSHUA GREENFIELD, by and through her attorneys, BARRETT LAW FIRM, P.C., complaining against the Defendants, THE MONROE CLINIC, INC., a corporation, and JOSEPH EHLE, M.D., and states as follows:

1. The Plaintiff is a citizen of the state of Illinois.

2. The Defendant, THE MONROE CLINIC, INC., is a Wisconsin corporation which has its principal place of business in the State of Wisconsin.

3. The Defendant, JOSEPH EHLE, M.D., is a citizen of the State of Wisconsin.

4. THE MONROE CLINIC, INC., is doing business as a foreign corporation in Freeport, Stephenson County, Illinois, as a medical clinic under the name "Highland Women's Care" (hereinafter "The Clinic").

5. The amount in controversy, exclusive of interest and costs, exceeds the amount or value specified by 28 U.S.C. § 1332(a) and jurisdiction in this proceeding exists by virtue of 28 U.S.C. 1332(a)(1).

6. The Defendant, JOSEPH EHLE, M.D., (hereinafter "Dr. Ehle") is a physician licensed to practice medicine in the State of Illinois and who holds himself out as a board certified specialist in Obstetrics and Gynecology.

7. At all times herein pertinent, Dr. Ehle was an employee and agent of the defendant, THE MONROE CLINIC, INC., practicing in Freeport, Stephenson County, Illinois, at The Clinic and was acting within the scope and course of such employment and agency.

8. On or about January 16, 2015, the Plaintiff, ALIVIA L. GREENFIELD (hereinafter "Alivia"), presented to The Clinic for having irregular menstruations.

9. After visits with Dr. Ehle on June 18, 2015 and July 2, 2015, Dr. Ehle recommended that Alivia undergo an LSCH (a Laparoscopic Supracervical Hysterectomy) on July 22, 2015.

10. It was the duty of Dr. Ehle to inform Alivia that there was a risk of spreading cancer to a more serious stage of the disease if he were to perform the LSCH in the manner he intended to perform it and there was cancer present in Alivia's uterine tissues. It was further his duty to inform Alivia of alternatives to the performance of the procedure in the manner he intended to perform it that would alleviate the risk of spreading any cancer present including use of a bag or a sack to contain the uterus before morsellation or performance of a standard hysterectomy with removal of the uterus intact.

11. Dr. Ehle failed to inform Alivia of the risks and alternatives to the procedure as set forth in paragraph 10 above.

12. Had Dr. Ehle informed Alivia of the risks and alternatives to the procedure as set forth in paragraph 10 above, no reasonable person, including Alivia, would have consented to the performance of the surgical procedure by Dr. Ehle as he intended to perform it.

13. On July 22, 2015, Alivia underwent a Laparoscopic Supracervical Hysterectomy performed by Dr. Ehle.

14. During the performance of the procedure, Dr. Ehle sent certain tissue suspicious for tumor to the pathology laboratory and spoke with the pathologist who informed him that examination of the tissue showed spindle cell neoplasm with further diagnosis pending additional studies. Essentially, this diagnosis was inconclusive for the presence or absence of a malignancy.

15. Despite this information from the pathologist, Dr. Ehle continued with the procedure and removed the uterus by means of morsellation of the uterine tissue into tiny fragments and removing as much of the fragmentation of the tissue as possible through the laparoscopic instrumentation.

16. Because the uterine tissue sent to pathology following the conclusion of this procedure was minutely fragmented due to the morsellation of the uterus, the findings on pathology at that time was Endometrial Stromal Tumor but further stating: "[h]owever, as the tumor is fragmented, the margin cannot be determined and distinction of endometrial stromal nodule and low-grade sarcoma cannot be performed." Subsequent testing could not determine whether the specimens were low-grade sarcoma or benign.

17. Alivia required referral to a gynecological oncologist who scheduled her for a C.T. scan and an exploratory laparoscopy on September 21, 2015. This procedure had to be converted to an open laparotomy and approximately 30 small sarcomatous tumors were found throughout Alivia's abdominal cavity and requiring that a full surgical procedure described as "an exploratory laparotomy, right salpingo-oophorectomy, trachelectomy, total omentectomy, and removal of sarcomatous implants" be performed.

18. The act of morsellating the uterus with the potentially malignant cells therein while within Alivia's body was the cause of the metastasis of the malignant tumor throughout her abdomen.

19. Performance of the procedure by Dr. Ehle without Alivia's informed consent as alleged herein caused Alivia to be injured as follows:

   a. She lost the opportunity for a cure of her malignancy by removal of it at stage I.

   b. He caused her malignant sarcoma to metastasize to a stage III disease, which is not curable and has a 90 to 100% chance of returning.

   c. He has caused her life expectancy to be significantly shortened.

   d. She has had to undergo significant surgical procedures in an effort to treat her advanced malignancy.

   e. She will require life-long medical care, monitoring and medication to treat her disease in the future, including the possibility of future surgical procedures.

   f. She has experienced great pain and suffering and in the future will continue so to suffer.

   g. She has suffered a loss of her normal life.

   h. She has suffered disfigurement and scarring.

   i. She has expended great sums of money for medical, surgical and hospital care and will in the future continue to be required to expend such sums.

20. The Defendant, THE MONROE CLINIC, INC., is liable for the negligent acts of its employee, Dr. Ehle, by virtue of *respondeat superior*.

21. At all times herein pertinent Alivia was married to the Plaintiff, JOSHUA GREENFIELD, who has been deprived of her services, support, relationship and consortium.

WHEREFORE, the Plaintiff, JOSHUA GREENFIELD, prays judgment against the

Defendant, THE MONROE CLINIC, INC., a corporation, and JOSEPH EHLE, M.D., in the sum exceeding $2,000,000.00 for his compensatory damages, plus his costs of suit.

                              ALIVIA L. GREENFIELD and JOSHUA GREENFIELD, Plaintiffs,

                              BY: Barrett Law Firm, P.C.

                              By:   S/ Gregory E. Barrett
                                      One of their Attorneys

Gregory E. Barrett
BARRETT LAW FIRM, P.C.
1645 Temple Lane
Rockford, IL 61112-1045
gbarrett@barrettandgilbert.com
815-322-9600